UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA GRIFFIN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>UNIVERSITY OF MAINE SYSTEM, et )<br>al.[1], )<br>)<br>Defendants. ) | Case No. 2:22-cv-00212-JDL |

**DEFENDANTS' PARTIAL MOTION TO DISMISS
WITH INCORPORATED MEMORANDUM OF LAW[2]**

Defendants University of Maine System, University of Southern Maine,[3] and Glenn Cummings (collectively "Defendants" or "UMS"), by and through undersigned counsel, move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts I-III of Plaintiff Patricia Griffin's ("Plaintiff") Complaint, as well as her request for certain remedies under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Maine Human Rights Act ("MHRA"), and the Maine Whistleblowers' Protection Act ("MWPA").

First, with respect to Plaintiff's First Amendment retaliation claim (Count I of the Complaint) brought pursuant to 42 U.S.C. § 1983, Plaintiff's claim fails because Plaintiff did not speak as a citizen on a matter of public concern with respect to her alleged protected activity, but rather spoke within the scope of her role as an employee of UMS. Moreover, with respect to Plaintiff's constitutional claims collectively—under the First Amendment and the Due Process and

---

[1] The parties jointly stipulated on September 13, 2022, to dismiss the University of Southern Maine ("USM") and are awaiting the Court's ruling on that filing. *See Stipulation of Dismissal* (ECF No. 12).

[2] This Motion to Dismiss seeks only partial dismissal of the Complaint. FED. R. CIV. P. 12(a)(4) automatically extends the time to answer the remaining counts in the Complaint until after the Court rules on the Motion to Dismiss. *See* 5B Wright & Miller, Federal Practice & Procedure § 1346 (3d ed.).

Equal Protection clauses of the Fourteenth Amendment—these claims fail because UMS is not a "person" as necessary to state a claim under § 1983 and UMS is otherwise immune under the Eleventh Amendment because it is an arm of the State of Maine. Likewise, Count I of the Complaint fails as to Defendant Glenn Cummings ("Cummings") in his official capacity because state officials sued in their official capacity are treated as the state for purposes of § 1983 and thus, are not a "person" for purposes of a § 1983 claim. Further, the Complaint does not allege an ongoing constitutional harm. Additionally, as to the claims against Cummings in his personal capacity, given Plaintiff's allegations in the Complaint and the state of constitutional law during the pandemic, Cummings is entitled to qualified immunity. Accordingly, for these reasons, Counts I and III of the Complaint should be dismissed.

Second, the Complaint fails to state a retaliation claim under the MWPA because Plaintiff did not engage in protected conduct as required under 26 M.R.S.A. § 833. Specifically, Plaintiff's asserted conduct was not in good faith nor in opposition to unsafe activities.

Third, Plaintiff's request for compensatory and punitive damages, attorney's fees, and any other available relief under 5 M.R.S.A. §§ 4613-14 are foreclosed with respect to both her MWPA and MHRA claims because Plaintiff has not satisfied the prerequisites of 5 M.R.S.A.§ 4622, and thus, is statutorily barred from recovering such remedies.

Finally, Plaintiff's request for punitive damages under Title VII and the MHRA must also be dismissed because those statutes both *expressly* preclude the recovery of punitive damages against UMS as a government entity.

**Factual Background**[4]

Plaintiff served as a Professor of Marketing at the University of Southern Maine from early 2015 until September 24, 2021. *Compl.* ¶¶ 12, 36 (ECF No. 1). USM is a part of the University of Maine System, and Cummings is the former president of USM. *Id.* ¶¶ 8, 10. At all relevant times during her employment with UMS, Plaintiff was subject to UMS' Environmental and Safety Policy. *See* **Exhibit 1**. That policy states that UMS will "[d]evelop, implement, and continuously improve environmental health and safety programs that eliminate safety hazards, [and] encourage safe work practices," and directs the UMS Chancellor "to take actions necessary to assure that all units of the University of Maine System are in compliance with this policy . . . ." *Id.*

On August 18, 2021, UMS implemented a masking policy (the "Policy"). *Id.* ¶ 14.[5] The Policy required "face coverings indoors in all university facilities at least through the end of September." **Exhibit 2**. The Policy also contemplated allowing "faculty and other instructors or presenters to *temporarily* remove a face covering while speaking or presenting in classrooms or presentation venues in which enhanced social distancing may be possible." *Id.* (emphasis added).

On August 24, 2021, Cummings was speaking at a luncheon that Plaintiff attended via Zoom. *Comp.* ¶ 15.[6] "Despite the mask mandate, Cummings did not wear a facemask." *Id.* ¶ 16. That same day, Plaintiff "sent an E-mail to Joanne Williams, Dean of the College of Management and Human Service, requesting data to support the mask mandate and providing studies showing that masks are ineffective at combating COVID-19." *Id.* ¶ 17. In her email, with the subject line

---

[4] UMS recites only those material, well-plead factual allegations for purposes of this Motion. UMS strongly disputes Plaintiff's factual allegations and her claims that it has done anything improper or illegal with respect to Plaintiff.

[5] Paragraph fourteen has a typographical error with respect to referring to the Chancellor of UMS. Moreover, while the Complaint indicates the Policy began on this date, throughout the COVID-19 Pandemic, UMS has relied upon scientific guidance from the federal and state Centers for Disease Control to inform all of its COVID-19 policies and continues to do so.

[6] Paragraph fifteen has an error with respect to the date asserted as part of its allegations. Given Plaintiff's other allegations, as well as the included documents provided herein by UMS, the correct year is 2021.

"addressing the current USM mandates," Plaintiff stated that her own research found no evidence to support that "wearing a mask while indoors as well as vaccinating an entire school population as the optimal method for stopping the transmission of …." Covid-19. **Exhibit 3**. Plaintiff noted that she "love[s] teaching at USM." *Id.* Plaintiff also stated she "wanted to share the information I gathered and relied upon when making my decision regarding these mandates before the start of classes next Monday to see that my decisions are science, evidence, and data based." *Id.* She further stated, "[h]owever, I do not want to cause any issues, especially for you, if I come to campus on Monday morning to teach my one face to face class so I wanted to give you enough time." *Id.* Along with that email, Plaintiff included a letter outlining her thoughts on the Policy and her "research" into the efficacy of masking to combat Covid-19. *See* **Exhibit 4**. In that letter, Plaintiff asserted "[i]t is a myth that masks prevent viruses from spreading" and that Dr. Anthony Fauci was "intentionally misleading the public" regarding the efficacy of Covid-19 vaccines. *Id.* at 1-2. Moreover, Plaintiff claimed that Cummings "created a hostile work environment" by mocking those who did not support "the University's groupthink regarding SARS-CoV-2." *Id.* at 3.

The next day, Dean Williams met with Plaintiff, and during this meeting Plaintiff "reiterated her request for data supporting the implementation of the mask mandate [and asserted] that Cummings had violated the Policy by not wearing a mask during the luncheon." *Compl.* ¶¶ 18-19. According to Plaintiff, she did not state she would not follow the Policy. *Id.* ¶ 20. Following this meeting, Plaintiff's "courses were removed." *Id.* ¶ 21.

"On August 27, 2021, a pre-disciplinary conference was held, via Zoom, and attended by Dean Williams, Megan Schratz, Griffin, and Paul Johnson [and Plaintiff] repeated her requests for data supporting the mask mandate." *Id.* ¶¶ 22-23. "During the meeting, Griffin was further told that she was not allowed to teach courses 100% online during the meeting." *Id.* ¶ 24. Plaintiff

vaguely states in the Complaint, without more, that "other male professors were allowed to teach their classes 100% online." *Id.*

"On September 8, 2021, Cummings sent Griffin a letter suspending her employment and moving to terminate her employment." *Id.* ¶ 26. "Cummings['] Letter was in retaliation for Griffin speaking out against the Policy and for requesting information on the Policy." *Id.* ¶ 30. On September 22, 2021, a hearing was held but Plaintiff opted not to attend. *Id.* ¶¶ 31, 33. Plaintiff did not feel "comfortable" attending the meeting because Cummings would be present, and she had claimed that he had created a hostile work environment. *Id.* ¶¶ 31, 34, 36. After the hearing, UMS terminated Plaintiff's employment. *Id.* ¶ 36.

## **Legal Standard**

Rule 12(b)(1) is the proper means for challenging a court's subject matter jurisdiction with respect to sovereign immunity. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). Similar to a motion brought pursuant to Rule 12(b)(6), when assessing a motion brought under Rule 12(b)(1), the Court "credits the plaintiff's well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). Importantly, "[t]he district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Perna v. Martinez*, No. cv 17-11643-IT, 2018 WL 4519361, at *2 (D. Mass. July 5, 2018), *report and recommendation adopted*, No. 17-cv-11643-IT, 2018 WL 4092073 (D. Mass. Aug. 28, 2018).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While the Court generally cannot consider documents outside of the Complaint when reviewing a motion to dismiss, it may consider

documents when the authenticity of the document is not disputed; official public records; documents central to Plaintiff's claims; or documents sufficiently referred to in the complaint. *See Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 716-17 (1st Cir. 2014). These documents merge into the pleadings. *Alt. Energy Inc. v. St. Paul Fire and Marine Ins., Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

## Argument

**1. Count I of the Complaint Fails as a Matter of Law Because Plaintiff's Alleged Protected Conduct Occurred Within the Scope of Her Employment, not as a Citizen on a Matter of Public Concern**

Plaintiff fails to plausibly state a claim for First Amendment retaliation because she was not speaking out as a citizen on a matter of public concern, a requisite for establishing such a claim. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

"A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007) (citation omitted). Although "[p]ublic employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees . . . those rights are not absolute [and as such,] the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* (citation omitted). "In order to succeed on a First Amendment retaliation claim, a party must show that her conduct was constitutionally protected, and that this conduct was a substantial factor or . . . a motivating factor driving the allegedly retaliatory decision." *Gorelik v. Costin*, 605 F.3d 118, 123 (1st Cir. 2010) (citation and internal alternations omitted). "[P]ublic employees do not speak as citizens when they 'make statements pursuant to their official duties,' and . . . accordingly, such speech is not protected by the First Amendment." *Decotiis v. Whittemore*, 635 F.3d 22, 30 (1st Cir. 2011) (quoting *Garcetti*,

6

547 U.S. at 421). This inquiry is a question of law for the Court. *Curran*, 509 F.3d at 45.

Whether a public employee is speaking as an employee rather than as a citizen is a two-step analysis pursuant to which the Court: (1) examines the employee's official responsibilities in a practical sense, meaning those duties or responsibilities the employee is expected to have, in addition to any listed duties or responsibilities, and (2) whether the speech at issue was made pursuant to those responsibilities. *See id.* at 31-32 (citation omitted). Whether the alleged speech is made as part of those duties or responsibilities is context driven, and the Court considers various non-determinative factors as part of this analysis, including: "the subject matter of the speech, whether the speech was made up the chain of command, whether the employee spoke at her place of employment . . . ." *Id.* at 32. While "[t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens," when public employees "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Leahy-Lind v. Maine Dep't of Health & Hum. Servs.*, No. 1:13-cv-00389-GZS, 2014 WL 4681033, at *17 (D. Me. Sept. 19, 2014) (citation omitted).

Here, Plaintiff's alleged First Amendment activity is predicated on her "speaking out against [UMS'] Policy and . . . requesting information on the policy." Compl. ¶¶ 30, 39. However, the record illustrates that Plaintiff was not speaking out as a citizen on a matter of public concern, but rather as an employee contesting her employer's policy for purposes of regulating her conduct within her classroom. As a result, Plaintiff fails to plausibly allege a claim for First Amendment retaliation.

It is axiomatic that as an employee of UMS, Plaintiff's duties and responsibilities in a

practical sense included compliance with UMS policies and rules. Indeed, UMS' environmental and safety policy directs employees to comply with all of UMS' environmental and safety policies and/or the Chancellor's directives. **Exhibit 1**. The Policy at issue focused on wearing face coverings in university "classrooms and other indoor spaces," *i.e.,* conduct within USM's facilities. **Exhibit 2**. Plaintiff sent an email challenging the efficacy of UMS's Policy from her UMS email account to one of her USM supervisors—Dean Williams. *See* **Exhibit 3**. This email was not made public. *Id.*; *Bruce v. Worcester Reg'l Transit Auth.*, 34 F.4th 129, 136–37 (1st Cir. 2022) (noting that speaking to a supervisor on matters of employment illustrates activity as employee). In fact, the subject line of Plaintiff's email was about *addressing* her employer's policy. *See id.*; *Garcetti*, 547 U.S. at 421 (stating concern with terms of employment indicates speaking as an employee).

Moreover, a review of Plaintiff's August 24, 2021, email illustrates that its principal purpose was to: (1) question the necessity of requiring face coverings to teach face-to-face classes; (2) alert Dean Williams about her disagreement with the Policy; and (3) give Dean Williams "enough time" as her supervisor to address any scheduling complications that would arise for her face-to-face course the following Monday. *See* **Exhibit 3**. That is simply not an activity of speaking out as a citizen on a matter of public concern but rather that of an employee contesting her employer's rules and policies. *See Garcetti*, 547 U.S. at 422. Similarly, Plaintiff does not include any specific factual allegations that plausibly support that her disagreements with her employer's Policy were lodged as a citizen and not an employee.

Accordingly, Count I of the Complaint should be dismissed.

2. **Counts I and III of the Complaint Should be Dismissed Because Defendants are not "Persons" as Necessary Under § 1983 and are Otherwise Immune**

   a. **Plaintiff's Constitutional Claims Fail against UMS and Cummings in his Official Capacity Because Neither is a "Person" as Required for Purposes of § 1983, and UMS and Cummings in his Official Capacity are Otherwise Immune Under the Eleventh Amendment**

Counts I and III of the Complaint are brought pursuant to § 1983. *See Compl.* ¶¶ 2, 38, 48-50. Section 1983 creates a private right of action through which plaintiffs may recover against state actors for constitutional violations. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). However, a § 1983 claim is only authorized against "persons," which does not include a State or arms of the State or state officials acting in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, § 1983 does not revoke a recognized immunity, like sovereign immunity, unless specifically abrogated. *Comfort ex rel. Neumyer v. Lynn Sch.*, 131 F. Supp. 2d 253, 255 (D. Mass. 2001) ("Congress has not abrogated sovereign immunity as a defense to claims under 42 U.S.C. §§ 1981 and 1983"). States and state entities are generally immune from suit under the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

Here, given that UMS is an arm of the state of Maine, and that Cummings was a state official when acting his official capacity, Counts I and III of the Complaint fail against UMS, and Count I of the Complaint fails against Cummings in his official capacity. UMS is an instrumentality and agency of the State of Maine. *See* 20-A M.R.S.A. § 10903; *Lockridge v. Univ. of Maine Sys.*, 2009 WL 1106529, at *21 (D. Me. Apr. 23, 2009) (stating that the University is "part of the state for purposes of Section 1983"). Indeed, Plaintiff's Complaint acknowledges this fact. *Compl.* ¶ 7. As a result, neither UMS nor Cummings acting in his official capacity are a "person" for purposes of § 1983 suit. *Fantini v. Salem State Coll.*, 557 F.3d 22, 33 (1st Cir. 2009)

("it is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.") (emphasis added); *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 701 (1st Cir. 1995) ("neither the state nor its 'alter ego' (state university) is a 'person' for section 1983 purposes, [and] neither is subject to suit under section 1983") (citation omitted).

Moreover, an entity that is an "arm of the state" is entitled to sovereign immunity under the Eleventh Amendment. *See Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 12 (1st Cir. 2011); *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991). Sovereign immunity likewise extends to state officials acting in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166, (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Will*, 491 U.S. at 71. "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Graham*, 473 U.S. at 167 n.14. Further, while there are limited circumstances in which state officials may be sued for prospective injunctive relief despite Eleventh Amendment immunity, *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015), Plaintiff's Complaint lacks the necessary factual allegations to fit within this narrow exception because the Complaint does not allege an *ongoing* violation of federal law. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986); *Massachusetts ex rel. Powell v. Holmes*, 546 F. Supp. 3d 58, 72 (D. Mass. 2021). In all, Plaintiff seeks redress for an alleged wrongful termination that occurred in September 2021, not for an ongoing wrong.

Accordingly, Counts I and III of the Complaint should be dismissed against UMS and Count I of the Complaint should be dismissed against Cummings in his official capacity.

### b. Count I of the Complaint Fails Against Cummings in his Personal Capacity Under Qualified Immunity[7]

"Qualified immunity is a judge-made construct that broadly protects public officials from the threat of litigation arising out of their performance of discretionary functions." *Bergeron v. Cabral,* 560 F.3d 1, 5 (1st Cir. 2009). To prevent the unnecessary litigation of claims from which public officials are immune, "immunity is to be resolved at the earliest possible stage in litigation." *Decotiis*, 635 F.3d at 36. Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).

The qualified immunity analysis requires assessing "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado,* 568 F.3d at 269. "Courts may conduct this inquiry sequentially, or resolve a particular case on the second prong alone." *Barton v. Clancy*, 632 F.3d 9, 22 (1st Cir. 2011). The "clearly established" prong has two elements: "(1) the clarity of the law at the time of the alleged civil rights violation, and (2) whether, given the facts of the particular case, a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Id.* (citation and internal alterations omitted). "[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.*; *see Decotiis*, 635 F.3d 37 ("plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with 'fair warning.'"). "In recent years, the Supreme Court has . . . emphasiz[ed] that clearly established . . . should not be defined at a high level of generality . . . [and] does not require a case directly on point [but]

---

[7]   Unlike Count I, Count III of the Complaint is only asserted against UMS, not Cummings.

11

existing precedent must have placed the statutory or constitutional question *beyond debate*." *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 304 (D. Mass. 2017) (collecting cases) (internal quotations omitted and emphasis added).

Assuming *arguendo* that Plaintiff has alleged factual allegations demonstrating Cummings violated a constitutional right, Cummings is entitled to qualified immunity. At the time of the alleged action, a reasonable defendant would not have clearly understood that such an action was unconstitutional beyond debate. Given Plaintiff's allegations and the merged documents the Court can consider, the relevant question for qualified immunity purposes is whether during the time span of August 24, 2021 until September 24, 2021, Plaintiff had a clearly established right to advocate against and seek the justifications for a university's indoor masking policy in the midst of a global pandemic such that it would have been clear to Cummings that he could not take adverse employment actions for such conduct by an employee. *See Falmouth Sch. Dep't v. Mr. Doe*, No. 2:20-cv-00214-GZS, 2021 WL 4468904, at *3 (D. Me. Sept. 29, 2021) (reconstructing relevant question for purposes of qualified immunity analysis). Given the circumstances of the alleged violation and the state of constitutional law during the pandemic, it is not at all clear that Cummings should have known, let alone *obviously understood*, that taking such actions would be violation of the law. *See Davis v. Scherer,* 468 U.S. 183, 195 (1984) ("The doctrine of qualified immunity may protect all but the plainly incompetent or those who knowingly violate the law") (internal quotations omitted).

Accordingly, to the degree Count I of the Complaint is not dismissed on other grounds, Cummings is entitled to qualified immunity for Plaintiff's First Amendment retaliation claim against him in his personal capacity.

### 3. Plaintiff's MWPA Claim Fails Because it Does not Plausibly Allege Plaintiff Engaged in Protected Activity

Plaintiff's MWPA claim is premised on her allegedly speaking out about Cummings' "improper conduct" for allegedly not wearing a mask at a USM luncheon, contrary to the Policy. *Compl.* ¶¶ 14, 16, 45. However, in light of Plaintiff's allegations, as well as those statements in **Exhibits 3-4** which merge into the pleadings, Plaintiff cannot plausibly allege she raised this alleged action by Cummings in good faith or to shed light on and in opposition to unsafe conduct given that she was *against* the COVID-19 masking Policy.

In order to state a claim under the MWPA, Plaintiff must plausibly allege (1) she engaged in activity protected by the MWPA; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 32, 126 A.3d 1145. The MWPA protects only those complaints made in "good faith" and based on "reasonable cause" to believe that an illegal or dangerous condition or practice exists. *See Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 11, 13 A.3d 773; *see also Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 11, 129 A.3d 944 ("A complaint is supported by reasonable cause when the employee has a subjective and objectively reasonable belief that a dangerous condition or practice exists."). "Good faith" means that the employee was motivated to make the report at least in part by a *desire to stop the dangerous condition*. *Porietis v. Tradesmen Int'l, LLC*, 227 F. Supp. 3d 126, 138 (D. Me. 2017) (citation omitted) (emphasis added). Moreover, to be protected activity, the activity it must "*shed light on* and be '*in opposition to*'" an illegal act or unsafe condition. *Pushard v. Riverview Psychiatric Ctr.*, 2020 ME 23, ¶¶ 19-20, 224 A.3d 1239 (emphasis in original).

Plaintiff's alleged protected activity consists of Plaintiff noting that Cummings did not wear a mask at a luncheon. Cummings' alleged conduct is not illegal. Accordingly, Plaintiff's

conduct may only be protected activity under the MWPA if it was made to reveal and oppose unsafe or dangerous conduct. However, Plaintiff's own allegations, together with **Exhibits 3-4**, show that her allegation about Cummings not wearing a mask was not a good faith report made to make UMS aware of an unsafe condition. By her own account, Plaintiff was *against* requiring masks and believed that masking was *unnecessary* to stop the spread of Covid-19. *Compl.* ¶ 30; **Exhibits 3-4** (emphasis added). As a result, Plaintiff cannot plausibly allege that she made this alleged report in good faith because she felt Cummings' action was dangerous. Reporting a violation of policy by itself does not equate to protected activity for purposes of the MWPA. Rather, the report must be predicated on a reasonable, good faith belief that a dangerous condition or practice exists. *See Levitt v. Sonardyne, Inc.*, 918 F. Supp. 2d 74, 88 (D. Me. 2013). Moreover, given the foregoing, Plaintiff's alleged conduct is not protected activity because it was not made in *opposition* to the alleged unsafe practice. *See Pushard*, 2020 ME 23, ¶¶ 19-20, 224 A.3d 1239. In fact, to Plaintiff, "[i]t is a myth that masks prevent viruses from spreading." **Exhibit 4** at 1. As a result, Plaintiff cannot plausibly allege that she was *opposed* to Cummings' action of allegedly not wearing a mask out of safety concerns.

Indeed, Plaintiff asserted Cummings "created a hostile work environment" by *mocking* those who did not support "the University's groupthink regarding SARS-CoV-2," *i.e.*, individuals who do not believe a masking policy is necessary. *Id.* at 3. The absence of good faith and that her conduct was not made in opposition to Cummings' action is only further confirmed by the fact that Plaintiff listed August 18, 2021— the date the Policy was announced— as the earliest date of *discrimination* in her MHRC Complaint. *See* **Exhibit 5**. It is clear that Plaintiff viewed the Policy of requiring masks as unlawfully discriminatory. In turn, Plaintiff cannot say her allegation about Cummings not wearing a mask at a USM event sought to expose and oppose an unsafe practice in

14

good faith.

Accordingly, Count II of the Complaint should be dismissed.

### 4. Plaintiff is Foreclosed from Recovering Remedies Under §§ 4513-14 for Failure to Comply with § 4622 for Purposes of the MWPA and MHRA

Plaintiff is barred from recovering compensatory and punitive damages or attorney's fees against UMS because she did not assert a MWPA claim before the MHRC and has not "alleged and established prior to the filing of" this action compliance with § 4622 for purposes of her MHRA claim.

"Before a plaintiff with a MHRA claim may recover attorney fees and damages, the plaintiff must establish that she first brought a claim before the [MHRC]." *Gordan v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942. However, Plaintiff did not assert a MWPA claim before the MHRC as necessary to recover the available remedies under §§ 4613-14. Instead, Plaintiff only asserted a claim for sex/sexual orientation discrimination. *See* **Exhibit 5**. Nowhere in her MHRC Complaint did Plaintiff assert she was a whistleblower or that she engaged in any kind of protected activity. *See id*. Accordingly, Plaintiff is precluded from recovering compensatory and punitive damages and attorney's fees against UMS. *See Carey v. AB Car Rental Servs., Inc*, No. 1:20-cv-00117-GZS, 2021 WL 431745, at *11 (D. Me. Feb. 8, 2021).[8]

Moreover, with respect to her MHRA claim, the Complaint fails to affirmatively allege and establish that Plaintiff has complied with § 4622 as necessary to recovery compensatory and punitive damages or attorney's fees. Section 4622(1)'s language is explicit in terms of mandating certain actions by a claimant in order to be eligible for such remedies. § 4622(1) ("Attorney's fees under section 4614 and civil penal damages or compensatory and punitive damages under section

---

[8] Plaintiff may still seek certain equitable relief if the Court does not otherwise dismiss Count II of the Complaint. *See Burnett v. Ocean Props. Ltd*., No. 2:16-cv-00359-JAW, 2017 WL 1331134 at *9 (D. Me. April 11, 2017).

4613 *may not* be awarded to a plaintiff in a civil action under this Act *unless* the plaintiff *alleges* and establishes . . . .") (emphasis added); *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 21-22 (1st Cir. 2001) ("section 4622 explicitly requires that the plaintiff *plead* the requisite MHRC filing") (emphasis added).

For these reasons, Plaintiff should be precluded from seeking available remedies under 5 M.R.S.A. §§ 4513-14 for her MWPA and MHRA claims.

**5. Plaintiff is Precluded from Recovering Punitive Damages Under Title VII and the MHRA against UMS as a Government Entity**

In both Count IV (Title VII) and Count V (MHRA) of the Complaint, Plaintiff seeks punitive damages. *Compl.* ¶¶ 51-61. However, because UMS is a government entity, punitive damages are not available under either statute.

Title VII specifically precludes an award of punitive damages against a "government agency." *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than* a government, government agency or political subdivision)") (emphasis added); *Collazo-Rosado v. Univ. of Puerto Rico*, 775 F. Supp. 2d 376, 388 (D.P.R. 2011). Therefore, the claims for punitive damages in Count III of the Complaint must be dismissed. Likewise, independent of Plaintiff's failure to comply with § 4622 precluding recovery for punitive damages, as well as other remedies, Plaintiff may not recover punitive damages against UMS under the MHRA. Section 4613(8)(i) of the MHRA precludes a plaintiff from recovering punitive damages against a "governmental entity." *See* 5 M.R.S.A. § 4613(8)(i) ("Punitive damages *may not* be included in a judgment or award against a governmental entity, as defined in Title 14, section 8102, subsection 2").

Accordingly, Plaintiff cannot recover punitive damages for either of her claims under Title VII and the MHRA, and these requests should be dismissed.

**Conclusion**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Partial Motion to Dismiss, dismiss Counts I-III of the Complaint, and dismiss Plaintiff's prayer for compensatory damages, punitive damages, and attorney's fees under the MHRA and MWPA, as well as Plaintiff's prayer for punitive damages under Title VII, with prejudice, and enter judgment in Defendants' favor on these claims and requests.

Dated: September 27, 2022

/s/ Shiloh D. Theberge
Shiloh D. Theberge, Esq.
William J. Wahrer, Esq.
Attorneys for Defendants University of Maine System, University of Southern Maine, and Glenn Cummings

BERNSTEIN SHUR
100 Middle Street, P.O. Box 5029
Portland, ME  04104
(207) 774-1200
stheberge@bernsteinshur.com
wwahrer@bernsteinshur.com