UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:22-cv-00212-JDL |
| | ) |
| UNIVERSITY OF MAINE SYSTEM, et al., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH <u>INCORPORATED MEMORANDUM OF LAW</u>

Defendants University of Maine System and Glenn Cummings (collectively "Defendants" or "UMS"), by and through undersigned counsel, move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts I-II of Plaintiff Patricia Griffin's ("Plaintiff") First Amended Complaint (ECF No. 15) (the "Amended Complaint"), as well as her request for certain remedies under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maine Human Rights Act ("MHRA").

Following UMS' Partial Motion to Dismiss (ECF No. 13), Plaintiff filed her Amended Complaint, in which she dropped her Maine Whistleblowers' Protection Act ("MWPA") claim, formerly Count III of the Complaint and asserted certain prerequisites of 5 M.R.S.A.§ 4622 regarding her MHRA claim. *See Compl*. ¶¶ 14, 16, 45 (ECF No. 1); *Am. Compl*. ¶¶ 55-56. Outside of these changes, the Amended Complaint's factual allegations are essentially identical to the factual allegations in the original Complaint. Moreover, Plaintiff's two additional factual allegations, *Am. Compl*. ¶¶ 17, 41, do not alter the fact that Counts I-II fail on multiple grounds and that Plaintiff is precluded as a matter of law from recovering punitive damages under Title VII

1

and the MHRA. Accordingly, the instant motion moves for dismissal on many of the same grounds previously articulated, albeit modified to reflect the Amended Complaint's reordered factual allegation paragraphs and current Counts.

As before, with respect to Plaintiff's First Amendment retaliation claim (Count I of the Amended Complaint) brought pursuant to 42 U.S.C. § 1983, this claim fails because Plaintiff did not speak as a citizen on a matter of public concern with respect to her alleged protected activity. Rather, Plaintiff spoke within the scope of her role as a UMS employee. Moreover, with respect to Plaintiff's constitutional claims—under the First Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment—these claims fail because UMS is not a "person" as necessary to state a claim under § 1983 and because UMS is otherwise immune under the Eleventh Amendment as an arm of the state of Maine. Likewise, Count I of the Amended Complaint fails as to Defendant Glenn Cummings ("Cummings") in his official capacity because state officials sued in their official capacity are treated as the state for purposes of § 1983 and thus, are not a "person" for purposes of a § 1983 claim. Further, the Amended Complaint does not allege an ongoing constitutional harm with respect to Cummings. Additionally, as to the claims against Cummings in his personal capacity, Cummings is entitled to qualified immunity. For all of these reasons, Counts I and II of the Amended Complaint should be dismissed.

Plaintiff's request for punitive damages under Title VII and the MHRA also must be dismissed because those statutes both *expressly* preclude the recovery of punitive damages against UMS as a government entity.

**Factual Background[1]**

Plaintiff served as a Professor of Marketing at the University of Southern Maine ("USM") and was an employee of USM and UMS from early 2015 until September 24, 2021. *Am. Compl.* ¶¶ 6, 11, 36. Cummings is the former president of USM. *Id.* ¶ 9. At all relevant times during her employment with UMS, Plaintiff was subject to UMS' Environmental and Safety Policy. *See* **Exhibit 1**. That policy states that UMS will "[d]evelop, implement, and continuously improve environmental health and safety programs that eliminate safety hazards, [and] encourage safe work practices," and directs the UMS Chancellor "to take actions necessary to assure that all units of the University of Maine System are in compliance with this policy . . . ." *Id*.

On August 18, 2021, UMS implemented a masking policy (the "Policy"). *Am. Compl.* ¶ 13.[2] The Policy required "face coverings indoors in all university facilities at least through the end of September." **Exhibit 2**. The Policy also contemplated allowing "faculty and other instructors or presenters to *temporarily* remove a face covering while speaking or presenting in classrooms or presentation venues in which enhanced social distancing may be possible." *Id.* (emphasis added).

On August 24, 2021, Cummings spoke at a luncheon that Plaintiff attended via Zoom. *Am. Comp.* ¶¶ 14-15. "Despite the mask mandate, Cummings did not wear a facemask." *Id.* ¶ 15. That same day, Plaintiff "sent an E-mail to Joanne Williams, Dean of the College of Management and Human Service, requesting data to support the mask mandate and providing studies showing that masks are ineffective at combating COVID- 19." *Id.* ¶ 16. In her email, with the subject line "addressing the current USM mandates," Plaintiff stated that her "own research" found no

---

[1] UMS recites only those material, well-plead factual allegations for purposes of this Motion. UMS strongly disputes Plaintiff's factual allegations and her claims that it has done anything improper or illegal with respect to Plaintiff.
[2] While the Amended Complaint indicates the Policy began on this date, throughout the COVID-19 Pandemic, UMS has relied upon scientific guidance from the federal and state Centers for Disease Control to inform all of its COVID-19 policies and continues to do so.

evidence to support that "wearing a mask while indoors as well as vaccinating an entire school population as the optimal method for stopping the transmission of . . . ." Covid-19.  **Exhibit 3**.  Plaintiff noted that she "love[s] teaching at USM."  *Id.*  Plaintiff also stated she "wanted to share the information I gathered and relied upon when making my decision regarding these mandates before the start of classes next Monday to see that my decisions are science, evidence, and data based."  *Id.*  She further stated, "[h]owever, I do not want to cause any issues, especially for you, if I come to campus on Monday morning to teach my one face to face class so I wanted to give you enough time."  *Id.*  Along with that email, Plaintiff included a letter outlining her thoughts on the Policy and her "research" into the efficacy of masking to combat Covid-19.  *See* **Exhibit 4**.  In that letter, Plaintiff asserted "[i]t is a myth that masks prevent viruses from spreading" and that Director of the National Institute of Allergy and Infectious Diseases Dr. Anthony Fauci was "intentionally misleading the public" regarding the efficacy of Covid-19 vaccines.  *Id.* at 1-2.  Moreover, Plaintiff claimed that Cummings "created a hostile work environment" by allegedly mocking those who did not support "the University's groupthink regarding SARS-CoV-2."  *Id.* at 3.

The next day, Dean Williams met with Plaintiff.  *Am. Compl.* ¶ 18.  During this meeting, Plaintiff "reiterated her request for data supporting the implementation of the mask mandate [and asserted] that Cummings had violated the Policy by not wearing a mask during the luncheon."  *Id.* ¶¶ 18-19.  According to Plaintiff, she did not state she would not follow the Policy.  *Id.* ¶ 20.  Following this meeting, Plaintiff's "courses were removed."  *Id.* ¶ 21.

"On August 27, 2021, a pre-disciplinary conference was held, via Zoom, and attended by Dean Williams, Megan Schratz, Griffin, and Paul Johnson [and Plaintiff] repeated her requests for data supporting the mask mandate."  *Id.* ¶¶ 22-23.  "During the meeting, Griffin was further told

that she was not allowed to teach courses 100% online during the meeting." *Id.* ¶ 24.  Plaintiff vaguely states in the Amended Complaint, without more, that "other male professors were allowed to teach their classes 100% online." *Id.*

"On September 8, 2021, Cummings sent Griffin a letter suspending her employment and moving to terminate her employment."  *Id.* ¶ 26.  Plaintiff alleges that "Cummings['] Letter was in retaliation for Griffin speaking out against the Policy and for requesting information on the Policy."  *Id.* ¶ 30.  On September 22, 2021, a hearing was held but Plaintiff opted not to attend.  *Id.* ¶¶ 31, 35.  Plaintiff did not feel "comfortable" attending the meeting because Cummings would be present, and she had claimed that he had created a hostile work environment.  *Id.* ¶¶ 32-34.  After the hearing, UMS terminated Plaintiff's employment.  *Id.* ¶ 36.

## Legal Standard

Rule 12(b)(1) is the proper means for challenging a court's subject matter jurisdiction with respect to sovereign immunity.  *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001).  Similar to a motion brought pursuant to Rule 12(b)(6), when assessing a motion brought under Rule 12(b)(1), the Court "credits the plaintiff's well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).  Importantly, "[t]he district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'"  *Perna v. Martinez*, No. cv 17-11643-IT, 2018 WL 4519361, at *2 (D. Mass. July 5, 2018), *report and recommendation adopted*, No. 17-cv-11643-IT, 2018 WL 4092073 (D. Mass. Aug. 28, 2018).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  While the Court generally cannot consider

documents outside of a complaint when reviewing a motion to dismiss, it may consider documents when the authenticity of the document is not disputed; official public records; documents central to Plaintiff's claims; or documents sufficiently referred to in the complaint. *See Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 716-17 (1st Cir. 2014). These documents merge into the pleadings. *See Alt. Energy Inc. v. St. Paul Fire and Marine Ins., Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The attached exhibits to this Motion squarely fit within these recognized categories given that they are either documents whose authenticity cannot be disputed or are documents central to Plaintiff's claims or directly referred to in the Amended Complaint.

## Argument

**1. Count I of the Amended Complaint Fails as a Matter of Law Because Plaintiff's Alleged Protected Conduct Occurred Within the Scope of Her Employment, not as a Citizen on a Matter of Public Concern**

Plaintiff fails to plausibly state a claim for First Amendment retaliation because she was not speaking out as a citizen on a matter of public concern, a requirement for establishing such a claim. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Perhaps recognizing the futility of her claim, the Amended Complaint now includes a conclusory factual allegation that "Plaintiff was not employed to comment on the Mask Mandate and her comments on the Mask Mandate did not fall under her job duties as a marketing professor." *Am. Compl.* ¶ 41. Putting aside that this is an improper conclusory allegation, *see Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 102 (1st Cir. 2013) (citation omitted), the allegation is premised on an erroneous view of the relevant inquiry for determining whether an individual was speaking as an employee or as a public citizen. Under the proper inquiry, and given the relevant facts at issue, Plaintiff's claim fails.

"A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007) (citation omitted).

Although "[p]ublic employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees . . . those rights are not absolute [and as such,] the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* (citation omitted). "In order to succeed on a First Amendment retaliation claim, a party must show that her conduct was constitutionally protected, and that this conduct was a substantial factor or . . . a motivating factor driving the allegedly retaliatory decision." *Gorelik v. Costin*, 605 F.3d 118, 123 (1st Cir. 2010) (citation and internal alternations omitted). "[P]ublic employees do not speak as citizens when they 'make statements pursuant to their official duties,' and . . . accordingly, such speech is not protected by the First Amendment." *Decotiis v. Whittemore*, 635 F.3d 22, 30 (1st Cir. 2011) (quoting *Garcetti*, 547 U.S. at 421). This inquiry is a question of law for the Court. *Curran*, 509 F.3d at 45.

Whether a public employee is speaking as an employee rather than as a citizen is a two-step analysis. The Court: (1) examines the employee's official responsibilities in a practical sense, meaning those duties or responsibilities the employee is expected to have, in addition to any listed duties or responsibilities, and (2) determines whether the speech at issue was made pursuant to those responsibilities. *See Decotiis*, 635 F.3d at 31-32 (citation omitted). Whether the speech at issue is made as part of one's employment duties or responsibilities is context driven, and the Court considers various factors as part of this analysis, including: "the subject matter of the speech, whether the speech was made up the chain of command, whether the employee spoke at her place of employment . . . ." *Id*. at 32. This inquiry is not formalistic and is not limited to formal job descriptions or official duties but instead is a practical exercise whereby courts look at the functional obligations an employee inherently has. *See Garcetti*, 547 U.S. at 425; *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008) (professor's complaint about difficulties in

administering an educational grant was considered speaking as a faculty employee because the grant, though not necessarily a formal job requirement, was "for the benefit of students" and therefore "aided in the fulfillment of his teaching responsibilities.").

Here, Plaintiff's alleged First Amendment activity is predicated on her "speaking out against [UMS'] Policy and . . . requesting information on the policy." *Am. Compl.* ¶¶ 30, 39. The record illustrates that Plaintiff was not speaking out as a citizen on a matter of public concern, but rather as an employee contesting her employer's policy for purposes of regulating her conduct within her classroom: the workplace. As a result, Plaintiff fails to plausibly allege a claim for First Amendment retaliation.

It is axiomatic that as an employee of UMS, Plaintiff's duties and responsibilities in a practical sense included compliance with UMS policies and rules. As an employee and teacher for UMS, Plaintiff's obligations and responsibilities included complying with her employer's workplace policies. *See Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010) (relevant inquiry is whether the speech was "furtherance of such duties."); *Cruz v. Puerto Rico Power Auth.*, 878 F. Supp. 2d 316, 324 (D.P.R. 2012). Indeed, UMS' environmental and safety policy directs *all employees* to comply with UMS' environmental and safety policies and/or the Chancellor's directives. **Exhibit 1**. The Policy at issue focused on wearing face coverings in university "classrooms and other indoor spaces," *i.e.,* conduct within USM's facilities and for teaching classes. **Exhibit 2**. Plaintiff sent an email challenging the efficacy of UMS' Policy from her UMS email account to one of her USM supervisors—Dean Williams. *See* **Exhibit 3**. Plaintiff's email was also about her concerns for the Policy in relation to the "*school population*." *Id.* This email also was not made public, nor was it concerned about the general public. *Id.*; *Bruce v. Worcester Reg'l Transit Auth.*, 34 F.4th 129, 136–37 (1st Cir.

2022) (noting that speaking to a supervisor on matters of employment illustrates activity as an employee). In fact, the subject line of Plaintiff's email was about *addressing* her employer's policy. *See id*.; *Garcetti*, 547 U.S. at 421 (stating concern with terms of employment indicates speaking as an employee).

Moreover, a review of Plaintiff's August 24, 2021 email illustrates that its principal purpose was to: (1) question the necessity of requiring face coverings to teach face-to-face classes at USM; (2) alert Dean Williams about her disagreement with the Policy; and (3) give Dean Williams "enough time" as her supervisor to address any scheduling complications that would arise for her face-to-face course the following Monday. *See* **Exhibit 3**. Plaintiff's communications to Dean Williams are those of an employee contesting her employer's rules and policies, not an activity of speaking as a citizen on a matter of public concern. *See Garcetti*, 547 U.S. at 422. Similarly, Plaintiff does not include any specific factual allegations that plausibly support that her disagreements with her employer's Policy were lodged as a citizen and not an employee.

Accordingly, Count I of the Amended Complaint should be dismissed.

**2. Counts I and II of the Amended Complaint Should be Dismissed Because Defendants are not "Persons" as Required Under § 1983 and are Otherwise Immune**

  a. **Plaintiff's Constitutional Claims Fail Against UMS and Cummings in His Official Capacity Because Neither is a "Person" as Required for Purposes of § 1983, and UMS and Cummings in his Official Capacity are Otherwise Immune Under the Eleventh Amendment**

Counts I and II of the Amended Complaint are brought pursuant to § 1983. *See Am. Compl.* ¶¶ 2, 38, 45-47. Section 1983 creates a private right of action through which plaintiffs may recover against state actors for constitutional violations. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). However, a § 1983 claim is only authorized against "persons," which does not include a State or arms of the State or state officials acting in their official capacities. *See Will v. Michigan Dep't of*

9

*State Police*, 491 U.S. 58, 71 (1989). Moreover, § 1983 does not revoke a recognized immunity, like sovereign immunity, unless specifically abrogated. *Comfort ex rel. Neumyer v. Lynn Sch.*, 131 F. Supp. 2d 253, 255 (D. Mass. 2001) ("Congress has not abrogated sovereign immunity as a defense to claims under 42 U.S.C. §§ 1981 and 1983"). States and state entities are generally immune from suit under the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

Here, given that UMS is an arm of the state of Maine, and that Cummings was a state official acting in his official capacity, Counts I and II of the Amended Complaint fail against UMS, and Count I of the Amended Complaint fails against Cummings in his official capacity. UMS is an instrumentality and agency of the state of Maine. *See* 20-A M.R.S.A. § 10903; *Lockridge v. Univ. of Maine Sys.*, 2009 WL 1106529, at *21 (D. Me. Apr. 23, 2009) (stating that the University is "part of the state for purposes of Section 1983"). Indeed, the Amended Complaint acknowledges this fact. *Am. Compl.* ¶ 7. As a result, neither UMS nor Cummings acting in his official capacity are a "person" for purposes of § 1983 suit. *Fantini v. Salem State Coll.*, 557 F.3d 22, 33 (1st Cir. 2009) ("it is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action") (emphasis added); *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 701 (1st Cir. 1995) ("neither the state nor its 'alter ego' (state university) is a 'person' for section 1983 purposes, [and] neither is subject to suit under section 1983") (citation omitted).

Moreover, an entity that is an "arm of the state" is entitled to sovereign immunity under the Eleventh Amendment. *See Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 12 (1st Cir. 2011); *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991). Sovereign immunity likewise extends to state officials acting in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166,

(1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Will*, 491 U.S. at 71. "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Graham*, 473 U.S. at 167 n.14. Further, while there are limited circumstances in which state officials may be sued for prospective injunctive relief despite Eleventh Amendment immunity, *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015), the Amended Complaint lacks the necessary factual allegations to fit within this narrow exception because it does not allege an *ongoing* violation of federal law. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986); *Massachusetts ex rel. Powell v. Holmes*, 546 F. Supp. 3d 58, 72 (D. Mass. 2021). Plaintiff seeks redress for an alleged wrongful termination that occurred more than a year ago, in September 2021, and not for an ongoing wrong. *See Hamilton v. Lajoie,* 660 F. Supp. 2d 261, 264 (D. Conn. 2009) ("despite the reference to [declaratory relief Plaintiff is not] seeking prospective injunctive or declaratory relief under the *Ex parte Young* doctrine"); *Donald M. v. Matava,* 668 F. Supp. 703, 706 (D. Mass. 1987) ("The Eleventh Amendment also bars suits against state officials for declaratory relief for past unlawful conduct where there is no continuing violation and thus no need for injunctive relief.").

Accordingly, Counts I and II of the Amended Complaint should be dismissed against UMS and Count I of the Amended Complaint should be dismissed against Cummings in his official capacity.

### b. Count I of the Amended Complaint Fails Against Cummings in His Personal Capacity Under Qualified Immunity[3]

"Qualified immunity is a judge-made construct that broadly protects public officials from

---

[3] Unlike Count I, Count II of the Amended Complaint is only asserted against UMS, not Cummings individually.

11

the threat of litigation arising out of their performance of discretionary functions." *Bergeron v. Cabral*, 560 F.3d 1, 5 (1st Cir. 2009).  To prevent the unnecessary litigation of claims from which public officials are immune, "immunity is to be resolved at the earliest possible stage in litigation." *Decotiis*, 635 F.3d at 36.  Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).

The qualified immunity analysis requires assessing "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado,* 568 F.3d at 269. "Courts may conduct this inquiry sequentially, or resolve a particular case on the second prong alone." *Barton v. Clancy*, 632 F.3d 9, 22 (1st Cir. 2011).  The "clearly established" prong has two elements: "(1) the clarity of the law at the time of the alleged civil rights violation, and (2) whether, given the facts of the particular case, a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Id.* (citation and internal alterations omitted). "[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.*; *see Decotiis*, 635 F.3d 37 ("plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with 'fair warning.'"). "In recent years, the Supreme Court has . . . emphasiz[ed] that [the] clearly established [standard]. . . should not be defined at a high level of generality . . . [and] does not require a case directly on point [but] existing precedent must have placed the statutory or constitutional question *beyond debate*." *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 304 (D. Mass. 2017) (collecting cases) (internal quotations omitted and emphasis added).

Assuming *arguendo* that Plaintiff has alleged factual allegations demonstrating Cummings violated a constitutional right, Cummings is entitled to qualified immunity. At the time of the alleged action, a reasonable official would not have clearly understood that such an action was unconstitutional beyond debate. Given Plaintiff's allegations and the merged documents the Court can consider, the relevant question for qualified immunity purposes is whether during the time span of August 24, 2021 through September 24, 2021, Plaintiff had a clearly established right to advocate against and seek the justifications for a university's indoor masking policy in the midst of a global pandemic such that it would have been clear to Cummings that he could not take adverse employment actions for such conduct by an employee. *See Falmouth Sch. Dep't v. Mr. Doe*, No. 2:20-cv-00214-GZS, 2021 WL 4468904, at *3 (D. Me. Sept. 29, 2021) (reconstructing relevant question for purposes of qualified immunity analysis). Given the circumstances of the alleged violation and the state of the law during the pandemic, it is not at all clear that Cummings should have known, let alone *obviously understood*, that taking such actions would be a violation of the law. *See Davis v. Scherer,* 468 U.S. 183, 195 (1984) ("The doctrine of qualified immunity may protect all but the plainly incompetent or those who knowingly violate the law") (internal quotations omitted).

Accordingly, to the degree Count I of the Amended Complaint is not dismissed on other grounds, Cummings is entitled to qualified immunity for Plaintiff's First Amendment retaliation claim against him in his personal capacity.

### 3. Plaintiff is Precluded from Recovering Punitive Damages Under Title VII and the MHRA against UMS as a Government Entity

In both Count III (Title VII) and Count IV (MHRA) of the Amended Complaint, Plaintiff seeks punitive damages. *Am. Compl.* ¶¶ 48-60. However, because UMS is a government entity, punitive damages are not available under either statute.

Title VII specifically precludes an award of punitive damages against a "government agency." *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than* a government, government agency or political subdivision)") (emphasis added); *Collazo-Rosado v. Univ. of Puerto Rico*, 775 F. Supp. 2d 376, 388 (D.P.R. 2011). Therefore, the claims for punitive damages in Count III of the Amended Complaint must be dismissed. Likewise, Plaintiff may not recover punitive damages against UMS under the MHRA. Section 4613(2)(B)(8)(i) of the MHRA expressly precludes a plaintiff from recovering punitive damages against a "governmental entity." *See* 5 M.R.S.A. § 4613(2)(B)(8)(i) ("Punitive damages *may not* be included in a judgment or award against a governmental entity, as defined in Title 14, section 8102, subsection 2") (emphasis added).

Accordingly, Plaintiff cannot recover punitive damages for either of her claims under Title VII and the MHRA, and these requests should be dismissed.

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Partial Motion to Dismiss, dismiss Counts I-II of the Amended Complaint, and dismiss Plaintiff's request for punitive damages under the Title VII and MHRA, with prejudice, and enter judgment in Defendants' favor on these claims and requests.

Dated: October 28, 2022

/s/ Shiloh D. Theberge
Shiloh D. Theberge, Esq.
William J. Wahrer, Esq.
Attorneys for Defendants University of Maine System, and Glenn Cummings

BERNSTEIN SHUR
100 Middle Street, P.O. Box 5029
Portland, ME  04104

(207) 774-1200
stheberge@bernsteinshur.com
wwahrer@bernsteinshur.com

15