UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| PATRICIA GRIFFIN, | ) ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2:22-cv-212-JDL |
| v. | ) ) | |
| UNIVERSITY OF MAINE SYSTEM, and GLENN CUMMINGS, in his official and individual capacity | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

NOW COMES the Plaintiff, Patricia Griffin, by and through her undersigned counsel and hereby respectfully submits this Opposition to Defendants' University of Maine System ("UMS") and Glenn Cummings, in his official and individual capacity, Partial Motion to Dismiss.  For the reasons stated below, the Court should deny the Defendants' Motion in part.

## I.      PROCEDURAL HISTORY

Plaintiff Patricia Griffin, a professor of marketing for the University of Southern Maine, at all times material until September of 2021, filed suit on July 14, 2022, against the University of Maine System, President Cummings in his official and personal capacities, and the University of Southern Maine.  Plaintiff subsequently voluntarily dismissed her claims against the University of Southern Maine.  On September 13, 2022, Defendants filed a Partial Motion to Dismiss.  Plaintiff thereafter filed her First Amended

1

Complaint on October 14, 2022, bringing the following claims against the remaining defendants:  Count I – First Amendment retaliation; Count II – Violation of the 14th Amendment Equal Protection and Due Process Clauses; Count III- Violation of Title VII of the Civil Rights Act – Discrimination Based Upon Sex; and Count IV – Violation of the Maine Human Rights Act – Discrimination Based Upon Sex.

Defendants filed their Partial Motion to Dismiss on October 28, 2022, seeking: Dismissal of Count I arguing that Plaintiff was acting within the scope of her employment and not as a citizen on a matter of public concern; Dismissal of Counts I and II arguing that Defendants are not "Persons" for the purposes of § 1983; and Dismissal of Plaintiff's claims for punitive damages under Counts III and IV.  Plaintiff will address each argument in turn, and with the exception of the Dismissal of UMS in Counts I and II, and Plaintiff's claims for punitive damages, the Court should deny the Defendants' Motion.

## II.    FACTS VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF

Ms. Griffin began working as a Professor of Marketing at the University of Southern Maine in or about April of 2015.  Am. Comp. ¶ 11.  On June 25, 2021, Ms. Griffin received tenure status or "just cause" status.  *Id.* ¶ 12.  Effective August 18, 2021, the Chancellor of the University of Maine System implemented a mandatory mask policy (hereinafter the "Policy").

Subsequently, Ms. Griffin attended a luncheon, via Zoom, on August 24, 2021, where President Cummings was a speaker.  Despite the Policy, Cummings did not wear a facemask.  Am. Comp. ¶¶ 14-15.  On August 24, 2021, Ms. Griffin sent an E-mail to

2

Joanne Williams, Dean of the College of Management and Human Service, requesting data to support the mask mandate and providing studies showing that masks are ineffective at combating COVID-19. *Am. Comp.* ¶ 16. Ms. Griffin never stated she would not comply with the Policy or refuse to wear a facemask. *Am. Comp.* ¶ 17.

In response to Ms. Griffin's E-Mail, she met, via Zoom, with Dean Williams on August 25, 2021. During the meeting, Ms. Griffin reiterated her request for data supporting the implementation of the mask mandate. During the meeting, Ms. Griffin noted that President Cummings had violated the Policy by not wearing a mask during the luncheon. At no time did Ms. Griffin state she would not wear a mask or would violate the Policy. *Am. Comp.* ¶¶ 18-20.

Immediately after the August 25, 2021 meeting, Ms. Griffin's courses were removed. Ms. Griffin was previously scheduled to teach one face-to-face course and two asynchronous online courses. On August 27, 2021, a pre-disciplinary conference was held, via Zoom, and attended by Dean Williams, Megan Schratz, Griffin, and Paul Johnson. Griffin repeated her requests for data supporting the mask mandate. At no time did Griffin indicate she would refuse to wear a mask or violate the Policy. During the meeting, Griffin was further told that she was not allowed to teach courses 100% online during the meeting. However, other male professors were allowed to teach their classes 100% online. Griffin was informed that she would only be allowed to teach courses online if she resigned her position and accepted a part-time position. *Am. Comp.* ¶¶ 20-25.

On September 8, 2021, Cummings sent Griffin a letter suspending her employment and moving to terminate her employment.  In the Letter, Cummings falsely claimed that Griffin sent an E-Mail to Dean Williams refusing to comply with the Policy.  Cummings further falsely claimed that Griffin verbally refused to wear a mask and indicated she would violate the Policy, among other false claims.  Cummings Letter was in retaliation for Griffin speaking out against the Policy and for requesting information on the Policy.  *Am. Comp.* ¶¶ 26-30.

A Grievance Hearing was scheduled for September 22, 2021.  Prior to the Hearing, Griffin learned that Cummings would be in attendance.  Griffin had filed a complaint with Human Resources against Cummings alleging he had created a hostile work environment for her.  Griffin was intimidated by Cummings presence and did not feel comfortable attending the meeting.  Accordingly, prior to the Hearing, Griffin notified Megan Schratz that she would not be attending.  The Hearing was held in Griffin's absence. Cummings subsequently sent Griffin a Letter dated September 24, 2021, terminating Griffin's employment effective September 22, 2021.  *Am. Comp.* ¶¶ 31-36.

## III.    STANDARD OF REVIEW

When reviewing a Fed. R. Civ. P. 12(b)(6) Motion, the Court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor."  *See, e.g., Garcia-Catalan v. United States*, 734 F.3d 100, 102 (1st Cir. 2013).  "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Id.*

4

"In other words, we ask whether the complaint 'contains sufficient factual matter to state a claim to relief that is plausible on its face.'" *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 717 (1st Cir. 2014).  "[A] complaint need not 'plead facts sufficient to establish a *prima facie* case,' . . . or 'allege every fact necessary to win at trial,' . . . to make out a plausible claim." *Id.* at 718 (citations omitted).  "'The *prima facie* standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.'" *Id.*  In civil rights cases "there is no heightened pleading standard." *Centro Medico del Turabo v. Feliciano de Melecio*, 406 F.3d 1, 5 (1st Cir. 2005).

## IV.  LEGAL ARGUMENT

### A.  PLAINTIFF'S FIRST AMENDMENT CLAIM UNDER 42 U.S.C. § 1983

Ms. Griffin's First Amendment Claims against the City and the individual Defendants are valid.  In order to prove a First Amendment relation claim, Plaintiff must show that her conduct was 1) constitutionally protected; and 2) a motivating factor in the retaliatory action.  *See, e.g., Gorelik v. Costin*, 605 F.3d 118, 123 (1st Cir. 2010).  The Supreme Court laid out a two-step inquiry to determine whether a public employee's speech is entitled to protection:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Lane v. Franks*, 134 S.Ct. 2369, 2378 (2014) (citing to *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

Speech involves a matter of public concern when "it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Meagher v. Andover School Committee*, 94 F. Supp. 3d 21, 40 (D. Mass. 2015) (citing to *Lane v. Franks*, 134 S.Ct. at 2380).

Here, Ms. Griffin's requests for data supporting the implementation of the Policy are protected speech. It is undeniable that the subject matter of Ms. Griffin's speech involved a matter of public concern, as mandatory mask policies and mandatory vaccinations have been perhaps the most controversial political and social concerns in the community over the past two years. Indeed, Defendants do not even argue otherwise. Instead, Defendants argue that Ms. Griffin's speech is not subject to protection because she was acting in her capacity as a professor, as opposed to a private citizen.

The question before the Court comes down to whether Ms. Griffin's requests for data supporting the Policy were within her job duties. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), a deputy district attorney wrote a memorandum, wherein he recommended the dismissal of a case based upon an improper search warrant affidavit. *Id.* at 414-415. The Court held that the employee's speech in *Garcetti* was not protected because it was made pursuant to his job duties. However, the Court explained that whether the speech at issue "concern[s] the subject matter of [the speaker's] employment" is "nondispositive,"

6

because the First Amendment protects some expression related to the speaker's job." *Id.* at 421. Instead, the "controlling factor" is whether the statements were "made pursuant to [the speaking employee's] duties," that is, whether such utterances were among the things that the employee "was employed to do." *Id.*

In *Lane v. Franks*, the Supreme Court clarified that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, ***not whether it merely concerns those duties***." 134 S.Ct. at 2379 (emphasis added).

In this case, unlike the deputy district attorney in *Garcetti* who wrote a memorandum recommending dismissal of a case, Ms. Griffin was not employed to question University Policy on masks or vaccinations. Her job was to teach students, and to prepare lectures and course materials. Policy making at the University is a task made at the highest levels of the University, and is made at, respectfully, much higher levels than Ms. Griffin's position. Arguing that Ms. Griffin's requests for the data supporting the Policy was within her job duties grossly overstates her authority and duties.

Ms. Griffin's statements cannot be fairly attributed to the University, which is the essence of what the Defendants argue. Ms. Griffin was not employed or authorized to make statements on behalf of University policy, rather, she was speaking out as a citizen concerned with the Policy.

Even viewing the facts in the light most favorable to Defendants, which is inappropriate on this Motion, ***at best*** Ms. Griffin's statements can only be viewed as concerning her duties as a marketing professor, namely the Policy's impacts on her

employment.  Under *Garcetti* and *Lane*, this is not enough to remove Ms. Griffin's First Amendment protections.

Defendants focus on the fact that Ms. Griffin raised her views privately to her employer rather than to argue that Ms. Griffin's speech is not protected, but the Supreme Court has expressly rejected this view in *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415-416 (1979).  In *Givhan,* a schoolteacher made demands or complaints to her employer, **which questioned school policies** the teacher believed were racially discriminatory in purpose or effect.  *Id.* at 412-413.  After the teacher was terminated, she filed suit alleging in pertinent part that her First Amendment rights were violated.  The Supreme Court agreed, and explained:

> The First Amendment forbids abridgment of the "freedom of speech." Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public. We decline to adopt such a view of the First Amendment.

*Id.* at 415-416.

Ms. Griffin's case is identical to the case in *Givhan*.  Like the schoolteacher in *Givhan* who raised questions and concerns to her employer regarding racially discriminatory policies, here, Ms. Griffin raised concerns to her employer regarding the mandatory mask policy and mandatory vaccinations.  Ms. Griffin did not lose her First Amendment protections simply because she raised her concerns to her employer privately.

As the schoolteacher's complaints in *Givhan* were protected by the First Amendment, Ms. Griffin's complaints regarding the Policy in this case are also protected

by the First Amendment, and Defendants' termination of Ms. Griffin violated her First Amendment rights.  For all of these reasons, the Court should deny Defendants Motion to Dismiss Count I.

### B. PLAINTIFF'S CONSTITUTIONAL CLAIMS

### 1. Plaintiff's Claims Against Cummings in his Official Capacity are Valid as Cummings Actions are Construed as an Act of Policy of UMS and Plaintiff seeks Prospective Relief

Defendants next seek dismissal of Plaintiff's claims in Count I and II against UMS and Cummings in his official capacity, because neither are "person for purposes under 1983."  Plaintiff does not object to a dismissal of Count I against UMS and Count II entirely, but Plaintiff's claims against President Cummings in his official capacity are valid.

In order to maintain official capacity actions "there must be an allegation 'that the entity followed a policy or custom' that was unconstitutional."  *Gomes v. University of Maine Sys.*, 304 F. Supp. 2d 117, 121-122 (D. Me. 2004) (citing standard to bring official capacity actions against officials of the University of Maine System).  "Policy" has been defined to include a single act of an official.  *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *Putnam v. Town of Saugus, Mass.*, 365 F. Supp. 2d 151, 178-179 (D. Mass. 2005).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-404.

The Supreme Court has explained:

> In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Id.* at 405.  Moreover, as Defendants concede, official capacity actions are also allowed where prospective relief is sought.  ECF No. 17 at 11 (citing to *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015).

In this case, it is clear that President Cummings deprived Ms. Griffin of her First Amendment rights, as he terminated her for merely requesting data supporting the Policy.  Plaintiff further incorporates herein her arguments in Section A above by reference.  As President Cummings was an authorized decisionmaker for UMS, his actions are fairly said to be that of UMS and accordingly, Plaintiff's official capacity claims against Cummings are valid.

Moreover, because Plaintiff seeks prospective relief in the form of reinstatement as a marketing professor, the official capacity action against Cummings is valid and similar to the plaintiff's claims in *Gomes*.  In *Gomes v. University of Maine Sys.*, 304 F.Supp 2d 117, the plaintiff filed suit against the University of Maine System and individual defendants in their official and individual capacities.  (D. Me. 2004).  The defendants filed a motion to dismiss claiming, in relevant part, that the University officials were not persons within the meaning of § 1983.  The Court rejected this

argument explaining that officials sued in their official capacities can be enjoined. *Id.* at 122-123. Like the plaintiff's claims in *Gomes*, in this case, Ms. Griffin seeks prospective relief in the form of reinstatement such that her official capacity claims are valid.

For these reasons, the Court should deny Defendants' Motion as to President Cummings in his official capacity.

### 2. Qualified Immunity Does Not Shield Cummings in his Personal Capacity as he Clearly Violated Plaintiff's Constitutional Rights.

Qualified immunity protects individual defendants for official actions "unless: (1) their conduct violated the Plaintiffs' constitutional rights; and (2) the law to this effect was clearly established under then-existing law so that a reasonable official would have known that his behavior was unlawful." *Gomes v. University of Maine Sys.*, 304 F. Supp. 2d 117, 123 (D. Me. 2004).

In this case, as noted above in Section A, and incorporated herein by reference, President Cummings actions violated Ms. Griffin's Frist Amendment rights. Defendants argue that Ms. Griffin did not have a clearly established right to "advocate against and seek the justifications for a university's indoor masking policy in the midst of a global pandemic such that it would have been clear to Cummings that he could not take adverse employment actions for such conduct by an employee." ECF No. 17 at 13.

Respectfully, the Supreme Court, in a nearly identical circumstance in *Givhan*, held that a teacher has a First Amendment right to raise concerns and questions to her employer regarding school policies she disagreed with. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415-416 (1979). President Cummings should have obviously

11

understood that terminating Ms. Griffin for simply requesting data and raising concerns with the Policy a violation of her First Amendment rights.  Simply, President Cummings did not agree with Ms. Griffin's statements and retaliated against her for making them.

For all of these reasons stated above in Section A and herein, as President Cummings violated Ms. Griffin's clearly established First Amendment rights, the Court should deny Defendants Motion to Dismiss regarding qualified immunity.

## V.    CONCLUSION

For all of the reasons stated above, the Plaintiff respectfully requests the Court deny the Defendants' Motion except with respect to Counts I and II against UMS and Plaintiff's punitive damages claims in Counts III and IV.


DATED:  November 18, 2022                    /s/John E. Baldacci, Jr.
                                             Stephen C. Smith, Esq., Bar No. 8720
                                             John E. Baldacci, Jr., Esq., Bar No. 5773
                                             Attorneys for Patricia Griffin
                                             STEVE SMITH TRIAL LAWYERS
                                             136 State Street, 2nd Floor
                                             Augusta, ME 04330
                                             207-622-3711
                                             jack@mainetriallaw.com