UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA GRIFFIN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>UNIVERSITY OF MAINE SYSTEM, et )<br>al., )<br>Defendants. ) | Case No. 2:22-cv-00212-JDL |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS  PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants University of Maine System and Glenn Cummings (collectively "Defendants" or "UMS"), by and through their undersigned counsel, hereby file this Reply to Plaintiff Patricia Griffin's ("Plaintiff") Opposition (the "Opposition") to Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint (the "Motion").  Based on the Opposition, the only remaining issues before the Court are whether the Amended Complaint plausibly asserts a claim for First Amendment retaliation and whether this claim against Defendant Glenn Cummings ("Cummings") in his official and personal capacities can proceed given the relevant legal requirements.[1]  Given the record and applicable law, UMS' Motion should be granted in its entirety.[2]

**Argument**

**1. Plaintiff was not Challenging the Policy as a Citizen on a Matter of Public Concern**

Plaintiff's First Amendment retaliation claim fails because she was not speaking out as a citizen on a matter of public concern.  *See Garcetti*, 547 U.S. at 417.  Plaintiff's arguments in attempting to evade this conclusion misconstrue *Garcetti's* and *Lane's* holdings, and fail to analyze

---

[1]  Plaintiff agrees that her constitutional claims against UMS and claim for punitive damages under Title VII and the MHRA cannot proceed. *Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss* at 2, 12 (ECF No. 18) (*Pl.'s Opp'n*).
[2]  Plaintiff does not object to the permissible documents included with UMS' Motion. Thus, these documents merge into the pleadings. Plaintiff also does not dispute that *Garcetti v. Ceballos,* 547 U.S. 410 (2006) and *Lane v. Franks*, 134 S. Ct. 2369 (2014) provides the relevant legal framework for her First Amendment retaliation claim.

1

the relevant practical factors, which, given the factual record, show Plaintiff was speaking as an employee. Instead, Plaintiff asks the Court to overlook the reality of her duties as a UMS employee and the context of her speech, and recast the purpose of her speech. Plaintiff also incorrectly asserts that there is no dispute as to whether her speech was a matter of public concern[3] and, in doing so, relies on a case that predates *Garcetti* and *Lane* by decades and utilizes a different legal standard. *Pl.'s Opp'n* at 6-8.

Determining whether a public employee is speaking as a citizen or as an employee is not a formalistic analysis dependent on what an employee is explicitly paid to do. *See Garcetti*, 547 U.S. at 425. It is a practical assessment based on the context of the employee's speech rather than a formal focus on job descriptions or technical duties. *See Bruce v. Worcester Reg'l Transit Auth.*, 34 F.4th 129, 137 (1st Cir. 2022). An employee's "duties" include those responsibilities or conditions that are inherent or intertwined with an employee's functional job duties. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 86 (2d Cir. 2022) (speech that is "part-and-parcel" and an "indispensable prerequisite" of job duties); *Henderson v. City of Flint, Michigan*, 751 F. App'x 618, 623 (6th Cir. 2018). Plaintiff does not dispute that as an employee she was subject to UMS' Environmental and Safety Policy, or that she was expected to comply with the masking policy (the "Policy") that required face coverings while working inside UMS' facilities. *See Mot.*, **Exhibit 1-2**. In fact, Plaintiff's duties in a practical sense included complying with *all* applicable UMS safety policies and rules. *See Decotiis v. Whittemore*, 635 F.3d 22, 31 (1st Cir. 2011) (inquiry focuses on "the duties the employee is actually expected to perform"). Plaintiff alleges her speech was "*speaking out against* [UMS'] Policy and . . . requesting information on the policy." *Am.*

---

[3] *See Defs.' Partial Mot. to Dismiss Pl.'s First Am. Compl.* at 8 (*Mot.*) ("Plaintiff was not speaking out as a citizen on a matter of public concern, but rather as an employee contesting her employer's policy for purposes of regulating her conduct within her classroom: the workplace").

*Compl.* ¶¶ 30, 39 (ECF No. 15) (emphasis added). Thus, Plaintiff's speech is focused on challenging her employer's safety policy, the need to regulate her place of work, and the efficacy of those measures. Perhaps realizing this is dispositive of her claim, Plaintiff attempts to recast her speech as "[p]olicy making" and argues that she was not employed to do "policy making." *Pl.'s Opp'n* at 7. Yet, based on Plaintiff's own allegations, she was speaking out *against* the need for the Policy, *i.e.*, disputing how her workplace should be managed, not crafting policies. Simply, Plaintiff's speech was "part-and-parcel" of her concerns about regulating her conduct at work.

Plaintiff's argument also overlooks the conditions of her speech. Plaintiff's speech was an email from her work account to her direct USM supervisor's work account. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 83 (1st Cir. 2019) ("complaints . . . made up the chain of command—is the quintessential example of speech that owes its existence to a public employee's official responsibilities"). In it, Plaintiff notes that she loves her job and her coworkers, and that she wants to assert her views "before the start of classes." *Mot.*, **Exhibit 3**. Plaintiff's email pertains to (i) questioning the necessity of requiring face coverings to teach face-to-face classes, and (ii) alerting her supervisor about her disagreement with the Policy so as to provide "enough time" to address any class scheduling issues. *See O'Connell v. Marrero-Recio*, 724 F.3d 117, 123 (1st Cir. 2013) (focus on workplace indicates speaking as an employee).

Further, Plaintiff's speech was not plausibly lodged on a matter of public concern. Instead, it was lodged as a complaint regarding her employer's policy. *See Shara*, 46 F.4th at 88 (internal communications focused on internal safety inspection protocols are not aimed at attracting public attention). Given its content, an objective observer reading Plaintiff's email would not believe that Plaintiff's grievances were being lodged as a citizen regarding a public concern. *See Specht v. City of New York*, 15 F.4th 594, 601 (2d Cir. 2021). Plaintiff fails to point to any "citizen

analogue," *i.e.,* a comparable public scenario, for this exact reason. *See Heim v. Daniel*, No. 1:18-cv-836, 2022 WL 1472878, at *11 (N.D.N.Y. May 10, 2022). Plaintiff's email concerns the "school population," was not public, and did not include anyone else besides Dean Williams. *Id.* at 84. While speech made privately may be protected in certain instances, the private nature of the speech is still significant. *See King v. Bd. of Cnty. Comm'rs*, 916 F.3d 1339, 1349 (11th Cir. 2019); *Pappas v. Giuliani*, 290 F.3d 143, 154 (2d Cir. 2002).

Instead of satisfying the relevant factors, Plaintiff primarily relies on *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410 (1979). *Pl.'s Opp'n* at 8. However, *Givhan* predates *Garcetti* and *Lane* by decades and was decided under a legal standard that *Garcetti* modified. *Compare Givhan*, 439 U.S. at 414-15 (looking at *Pickering* balancing test) *with Garcetti*, 547 U.S. at 417 ("*Pickering* provides a useful *starting point*") (emphasis added). *Givhan* did not analyze the employee's job duties and stands for the limited proposition that private speech does not necessarily mean the speech cannot be an expression of a public concern. *See Garcetti*, 547 U.S. at 420. As such, Plaintiff's reliance on *Givhan* is misplaced and Count I should be dismissed.

2. **Count I Against Cummings in his Official Capacity Fails Because Plaintiff Fails to Allege an Ongoing Violation and Seeks Relief Barred Under *Ex Parte Young*[4]**

Plaintiff avers that Count I survives against Cummings in his official capacity because it seeks prospective relief. *Pl.'s Opp'n* at 10-11. However, given the substance of the relief sought, the requested relief is barred under the Eleventh Amendment and must be dismissed.

"*Ex Parte Young* . . . represents an exception to Eleventh Amendment immunity under which state officials may be sued in their official capacities for injunctive relief." *Mass. ex rel. Powell v. Holmes*, 546 F. Supp. 3d 58, 71 (D. Mass. 2021) (internal alterations omitted). To fit

---

[4] Plaintiff largely utilizes case law that focuses on municipal liability. *Pl.'s Opp'n* at 9. But UMS is a state entity and Cummings is a state official. *See Payne v. Stacy*, No. 18-cv-850, 2020 WL 886185, at *6 (E.D. Wis. Feb. 24, 2020) ("The Department is a state agency, not a municipality, so *Monell* does not apply.").

4

within this narrow exception, Plaintiff must assert an *ongoing* violation of federal law and cannot seek equitable relief that is retroactive or monetary in nature. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 113 S. Ct. 684, 688 (1993); *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009); *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020). This inquiry focuses on the substance of the relief sought. *See Papasan v. Allain*, 478 U.S. 265, 278-79 (1986); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 511 (6th Cir. 2008).

Here, the Amended Complaint fails to plausibly allege an ongoing federal violation or that Plaintiff's requested relief is aimed to prospectively remedy an ongoing harm. *See Town of Barnstable v. O'Connor*, 786 F.3d 130, 139 (1st Cir. 2015). Instead, Count I seeks declaratory relief on three (3) bases. *See Am. Compl.* ¶ 44(a)-(c). Tellingly, Plaintiff focuses only on one basis: a declaratory judgment reinstating Plaintiff to her prior position. *Pl.'s Opp'n* at 10. Although seeking reinstatement may fit within the *Ex Parte Young* paradigm in certain circumstances, Plaintiff seeks a declaratory judgment for reinstatement "with all *benefits*, seniority, *and salary* reinstated, *retroactive* to the time of her suspension." *Am. Compl.* ¶ 44(a) (emphasis added). Plaintiff explicitly seeks *"retroactive"* relief. *Id*. Seeking retroactive relief and/or monetary benefits is not permissible. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979) ("*Ex parte Young* . . . may not include a retroactive award."); *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 29 (1st Cir. 2005) ("Relief that is tantamount to an award of damages for a past violation of federal law, even though styled as something else, is barred.") (cleaned up)). Substantively, Plaintiff's request is an impermissible request aimed at compensating her for an alleged past harm.

Plaintiff's remaining requests for declaratory relief also are not permissible. Plaintiff's second request seeks a declaration that Cummings has "violated and continue[s] to violate" her federal rights. *Am. Compl.* ¶ 44(b). Yet again, the Amended Complaint contains no allegations of

5

an applicable ongoing violation. Indeed, Plaintiff's perceived violation is premised on an alleged wrongful termination that occurred *more than a year ago*. *See Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir.), *cert. denied*, 208 L. Ed. 2d 277, 141 S. Ct. 672 (2020) (declaring that defendant violated First Amendment "is fundamentally retrospective because it does not relate to an ongoing violation of their federal rights; instead, it pertains to Plaintiffs' 2016 termination."). Similarly, Plaintiff's request for a declaration that her discipline be "null and void" is not permissible. *Am. Compl.* ¶ 44(c). This is not prospective because it focuses solely on removing a past disciplinary decision. *See Drown v. Utah State Off. of Educ.,* 767 F. App'x 679, 685 (10th Cir. 2019) (relief seeking to remove disciplinary record is not prospective); *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 229 (S.D.N.Y. 2013), *aff'd,* 779 F.3d 97 (2d Cir. 2015). Accordingly, Count I should be dismissed against Cummings in his official capacity.

3. **Cummings is Entitled to Qualified Immunity Because Plaintiff's Asserted Right was not Clearly Established Given the Nature and Context of the Speech**

In response to UMS' contention that Cummings is entitled to qualified immunity, Plaintiff avers that *Givhan* presents "a nearly identical circumstance" to the case at bar such that Cummings should have obviously understood that his conduct violated Plaintiff's First Amendment rights. *Pl.'s Opp'n* at 11. *Givhan* is not only not "nearly identical" to the case at hand, but is materially distinguishable and Plaintiff's argument fails.

To overcome qualified immunity, the claimed violated right must be "clearly established" such that an official, from an objective standpoint, would have known their conduct violated the law. *See Matalon v. Hynnes*, 806 F.3d 627, 633 (1st Cir. 2015). This requires "a consensus of cases of persuasive authority that broadcasts a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." *McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir. 2017) (cleaned up). The Supreme Court has stressed that this cannot be defined at a high level of

6

generality and depends on the specific facts of a case and "not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

*Givhan* is materially distinguishable in multiple respects. First, *Givhan* did not take place during a global pandemic and did not concern a university's safety policy designed to lower the risk of transmitting an infectious disease or an employment termination following a progressive disciplinary process. *Am. Compl.* ¶¶ 16, 30-31, 35; *Mot.*, **Exhibits 2-3**. *Givhan* concerned a high school teacher who was not rehired following her expressing concerns on the "respective roles of whites and blacks" at her school and seeking to end racially discriminatory policies and practices. *Id.* at 412-13; *Ayers v. W. Line Consol. Sch. Dist.*, 555 F.2d 1309, 1313 (5th Cir. 1977), *vacated in part sub nom. Givhan*, 439 U.S. 410 (1979). *Givhan* is at best only loosely similar in that Givhan was an educator and asserted a First Amendment retaliation claim about challenging an employer's policy. That is insufficient to show Cummings should have objectively understood *beyond a debate* that his actions as part of disciplining an employee within a progressive disciplinary process, who advocated against a university's safety policy in the midst of a global pandemic, would have violated federal law. *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 215 (1st Cir. 2015) ("Courts penalize [officials] for violating 'bright lines,' not for making 'bad guesses in gray areas.'"). Accordingly, Cummings is entitled to qualified immunity as to Count I.

## Conclusion

For these reasons, Defendants respectfully request that this Court grant Defendants' Partial Motion to Dismiss, dismiss Counts I-II of the Amended Complaint, and dismiss Plaintiff's request for punitive damages under Title VII and the MHRA, with prejudice, and enter judgment in Defendants' favor on these claims and requests.

Dated: December 12, 2022

                                                   */s/ Shiloh D. Theberge*

Shiloh D. Theberge, Esq.
William J. Wahrer, Esq.
Attorneys for Defendants University of Maine System, and Glenn Cummings

BERNSTEIN SHUR
100 Middle Street, P.O. Box 5029
Portland, ME  04104
(207) 774-1200
stheberge@bernsteinshur.com
wwahrer@bernsteinshur.com

8